854 So.2d 941 (2003)
Dr. J. William BARROIS
v.
Elizabeth BURRUS, et al.
No. CW 02-1367.
Court of Appeal of Louisiana, Third Circuit.
June 11, 2003.
Writ Denied October 31, 2003.
*942 Alan K. Breaud, Timothy W. Basden, Breaud & Lemoine, Lafayette, LA, for Plaintiff/Respondent, Dr. J. William Barrois.
Craig A. Davis, Lafayette, LA, for, Defendant/Applicant Elizabeth Burrus.
Court composed of BILLIE COLOMBARO WOODARD, ELIZABETH A. PICKETT, and BILLY HOWARD EZELL, Judges.
WOODARD, Judge.
Ms. Elizabeth Burrus seeks supervisory writs from the trial court's judgment, granting Dr. J. William Barrois' motion to set aside an ex parte order of abandonment and dismissal of his suit to annul the default judgment she obtained against him in an underlying dental malpractice claim. We grant the writ application.

* * * * *
On January 9, 1998, Ms. Elizabeth Burrus filed a malpractice suit against Dr. J. William Barrois, DDS. Immediately, he contacted Mr. Sera Russell, Ms. Burrus' attorney, and offered to help defray her dental care costs which insurance did not cover. Dr. Barrois alleges that Mr. Russell assured him that he did not have to worry. Relying on this statement, Dr. Barrois says that he believed that Ms. Burrus would not pursue the claim. Consequently, he did not retain an attorney or file an answer. On May 21, 1998, Ms. Burrus obtained a preliminary default judgment, which she later confirmed, against him. The trial court rendered a default judgment for $35,154.17 against Dr. Barrois on September 25,1998.
On November 12, 1998, Dr. Barrois filed a petition to annul the default judgment, claiming that Ms. Burrus and her attorney procured the default judgment by fraud or ill practices. He asserted that Mr. Russell's statement, that he had "nothing to worry about," "lulled him into a sense of compliancy regarding their intentions, and thereby, deprived him of his legal rights and the ability to defend himself." Notwithstanding, on April 30, 1999, Dr. Barrois filed responses to Ms. Burrus' interrogatories and requests for production regarding his annulment suit.
On May 1, 2002, Ms. Burrus filed a motion to dismiss his suit for failure to prosecute. Immediately, she obtained an ex parte order of abandonment. On May 20, 2002, he filed a motion to set aside the ex parte order of abandonment based on La.Code Civ.P. art. 561(A)(2). The trial court heard the matter on October 21, 2002 and granted his motion, finding that it had improperly issued the ex parte order because it issued the order before the full completion of a three year abandonment default period. Consequently, Ms. Burrus applied for supervisory writs, seeking a reversal of the trial court's judgment, *943 granting the motion to set aside the ex parte order of abandonment.

* * * * *

ABANDONMENT
Abandonment is a device that the Legislature adopted "`to put an end to the then prevailing practice of filing suit to interrupt prescription, and then letting the suit hang perpetually over the head of the defendant unless he himself should force the issue.'"[1] Abandonment is a form of liberative prescription, independent from the prescription that governs the underlying substantive claim.[2] It is a balancing concept"on the one hand, the desire to see every litigant have his day in court, and not to lose same by some technical carelessness or unavoidable delay; on the other hand, the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription."[3]
La.Code Civ.P. art. 561 governs abandonment and provides, in pertinent part:
A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years[.]
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment [.]
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
(Emphasis added.)
In determining when the three years had passed in the instant case,first, we consider La.Code Civ.P. art. 5059, which governs the computation of certain time:
In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.
La.Code Civ. P. art. 561 specifically provides that no formal order of the court is needed. Our Supreme Court has held that La.Code Civ.P. art. 561 is self-executing; abandonment occurs automatically upon the passing of three-years without either part taking a step and is effective without court order.[4]
Dr. Barrois asserts that the trial court's decision to set aside the order of abandonment and dismissal of his suit was correct because the three year time period for abandonment had not yet expired when Ms. Burrus filed her motion to dismiss. Furthermore, he argues that her filing was a step in the prosecution, interrupting the abandonment period and causing it to start anew.
*944 Given the Legislature's implied intent behind Article 561, we find this logic to be circular. Furthermore, as the supreme court noted in Chevron v. Traigle, "A party takes a `step' in the prosecution or defense of a suit when he takes formal action, before the court and on the record, intended to hasten the matter to judgment."[5] (Emphasis added.)
BLACK'S LAW DICTIONARY defines prosecute as "[t]o commence and carry out a legal action; to engage in; carry on,"[6] as opposed to dismiss, which BLACK'S defines as "[t]o send (something) away; specif., to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved."[7] Clearly, a motion to dismiss is a pleading, constituting a formal part of the record. Notwithstanding, a motion to dismiss is not intended to hasten the matter to judgment. Rather, its intent is to terminate the action without any further proceeding on the merits; thus, failing to lead to a final resolution. To the contrary, a judgment necessarily implies or involves the trial court's resolution after a hearing on the merits.
In the case at bar, prescription began on May 1, 1999, the day after the last filing on April 30, 1999, and accrued at the end of that day three years laterApril 30, 2002. Thus, by operation of law under Article 561, Dr. Barrois' suit would have been considered to be abandoned at the end of April 30, 2002 without any formal motion to dismiss it. Thus, while Ms. Burrus' Motion to Dismiss was not required, the trial court was correct in issuing the order of dismissal based on abandonment. Even had her filing been premature, as Dr. Barrios urges, it simply would have had no legal effect and still would not have constituted a step in prosecution. Moreover, since her filing was not a step in the prosecution/defense of the case, no relevant activity occurred from April 30, 1999 until May 20, 2002, when Dr. Barrois filed his Motion to Set Aside Ex Parte Order of Abandonment. Thus, by operation of law, his suit was deemed to be abandoned.
In summary, as we do not believe that the Legislature intended for the filing of a Motion to Dismiss on the grounds of abandonment to constitute a step in the prosecution of a suit since such a conclusion would belie the purpose of abandonment we reverse.
Finally, Dr. Barrois maintains that letters, regarding settlement negotiations and the attempted scheduling of depositions, between his counsel and Ms. Burrus' counsel should be considered "steps in the prosecution." However, the Louisiana Supreme Court resolved this issue earlier in Chevron v. Traigle[8] when it held that attorneys' correspondence, regarding negotiation of settlement, was not a "step" in the prosecution and did not prevent the parties from taking some formal action in and before the trial court. Furthermore, no depositions were taken or even scheduled in the instant case because, despite many options available to Dr. Barrois' counsel, he refused to agree to the depositions unless Ms. Burrus returned from Las Vegas, where she had moved, to Lafayette for the process.
Accordingly, Article 561's requisite regarding depositions was not met. In other words, simply discussing or disputing taking depositions was not enough to constitute a step in prosecution.

*945 CONCLUSION
We find that Ms. Burrus' motion to dismiss did not constitute a step in prosecution/defense of a suit within the meaning of Louisiana Code of Civil Procedure article 561. Thus, we hold that the trial court erred in granting Dr. Barrois' motion to set aside the ex parte orders of abandonment and of dismissal. The trial court's order, granting the suit's dismissal based on abandonment, was correct. Consequently, we assess all costs to Dr. Barrois.
WRIT GRANTED.
NOTES
[1] Clark v. State Farm Mutual Ins. Co., 00-3010,(La.5/15/01); 785 So.2d 779, 786, citing Sanders v. Luke, 92 So.2d 156 (La.App. 1 Cir.1957).
[2] Id. at 787.
[3] Sanders v. Luke, 92 So.2d 156 (La.App. 1 Cir.1957).
[4] Clark v. State Farm Mutual Insurance Company, 785 So.2d at 784.
[5] 436 So.2d 530, 532 (La.1983).
[6] BLACK'S LAW DICTIONARY 1237 (7th ed.1999).
[7] BLACK'S LAW DICTIONARY 482 (7th ed.1999).
[8] 436 So.2d 530.