755 So.2d 1033 (2000)
Robert J. GUIDRY
v.
FIRST NATIONAL BANK OF COMMERCE and Bank of Laplace.
No. 98-CA-2383.
Court of Appeal of Louisiana, Fourth Circuit.
March 1, 2000.
*1034 Arthur A. Lemann, III, Arthur A. Lemann, IV, Arthur A. Lemann, III & Assoc., Inc., New Orleans, Louisiana, Attorneys for Plaintiff/Appellant, Robert J. Guidry.
John J. Weigel, R. Patrick Vance, Thomas K. Potter, III, Amy L. Landry, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Louisiana, Attorneys for Defendant/Appellee, First National Bank of Commerce.
B. Franklin Martin, III, Stephen W. Rider, Edward L. Fenasci, McGlinchey Stafford A Professional Limited Liability *1035 Company, New Orleans, Louisiana, Attorneys for Defendant/Appellee, Bank of Laplace.
Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, and Judge MICHAEL E. KIRBY.
MURRAY, Judge.
Plaintiff, Robert J. Guidry, appeals the dismissal of his petition to annul a judgment for failure to state a cause of action. We affirm.

FACTS AND PROCEDURAL HISTORY:
In 1989, Robert Guidry filed suit against First National Bank of Commerce (FNBC) and Bank of Laplace (BOL), as well as other individual defendants not relevant to this action.[1] A jury returned a verdict in favor of Mr. Guidry, and judgment was rendered in May 1994 casting each financial institution for $681,000 in damages. FNBC and BOL appealed. After determining that improper jury instructions necessitated a de novo review, this Court reversed that judgment in pertinent part, finding no basis in the law for imposing liability on either of the financial institutions. Guidry v. Bank of LaPlace, 94-1758 (La.App. 4th Cir.9/15/95), 661 So.2d 1052, writs denied, 95-2477, 95-2490, 95-2498 (La.1/5/96), 666 So.2d 295-96.
Some time after this Court's decision had become final, Mr. Guidry's counsel learned that the author of the appellate opinion was an FNBC customer and that his son-in-law and family had acquired stock in FNBC's parent corporation, First Commerce Corporation (FCC), in 1995. Based on this information, Mr. Guidry filed the instant petition on March 23, 1998, seeking to annul the judgment that had reversed his favorable jury verdict. He asserted that the recently discovered information was grounds for the recusal of the appellate judge, and that the failure to disclose the relationships constituted fraud or ill practice as contemplated by Article 2004 of the Code of Civil Procedure.
FNBC and BOL filed declinatory, dilatory and peremptory exceptions to the Petition for Nullity, and Mr. Guidry opposed the exceptions.[2] After a hearing, the trial court issued a Judgment with reasons dismissing Mr. Guidry's petition for failure to state a cause of action. The court subsequently signed an Amendment of Judgment in order to comply with Article 1918 of the Code of Civil Procedure, which requires that the judgment be set out separately from the court's reasons for same, and to clarify that the petition was dismissed with prejudice. This appeal followed.

DISCUSSION:
The standards for evaluating an exception of no cause of action are well established in the law:
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Danville v. Texaco, Inc., 447 So.2d 473 (La.1984). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to *1036 the relief sought. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Kuebler v. Martin, 578 So.2d 113 (La. 1991).
Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993) (footnote omitted). In applying this standard, the nonmoving party must be given the benefit of all reasonable inferences, and the exceptor has the burden of showing that no cause of action exists on the facts alleged. City of New Orleans v. Bd. of Directors of La. State Museum, 98-1170, p. 9 (La.3/2/99), 739 So.2d 748, 755.
Article 2004 of the Code of Civil Procedure specifies that "[a] final judgment obtained by fraud or ill practices may be annulled." Under this article, the party seeking annulment must show both that the challenged judgment resulted from a deprivation of a legal right and that its enforcement would be "unconscionable and inequitable." Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983), and cases cited therein. Thus, in the instant case, we must determine whether the facts alleged in Mr. Guidry's petition would entitle him to nullify this Court's 1995 judgment under this standard.
Mr. Guidry's petition alleges that at the time his appeal was pending, FNBC held five collateral mortgages, executed in 1984-85, on property owned by Judge Landrieu, the author of the opinion, and members of his immediate family. One of these collateral mortgages had been accepted for FNBC by the same loan officer whose conduct was at issue in the underlying suit, two were cancelled during the period between the trial court and appellate judgments, and two were cancelled in 1997. The petition further asserts that in June 1995, one of Judge Landrieu's sons-in-law inherited stock in a bank holding company that had agreed a month earlier to merge with FCC, FNBC's holding company. When this merger was completed in October 1995, Judge Landrieu's son-in-law, and the son-in-law's two siblings, allegedly received FCC stock valued at more than $3.3 million.
According to Mr. Guidry's petition, these facts, as well as "[o]ther acts which may be discovered," would have entitled him to recuse Judge Landrieu under Civil Procedure article 151 B(4) and (5), under several Canons of the Louisiana Code of Judicial Conduct, and under the due process provisions of the federal and state constitutions. Asserting that the failure to disclose Judge Landrieu's partiality and interest in the outcome of the case constitutes an "ill practice," Mr. Guidry prays for a judgment annulling the Fourth Circuit opinion and reinstating the jury verdict.[3]
The trial court held that the facts alleged by Mr. Guidry established, at most, the appearance of impropriety, and that, absent any allegation that Judge Landrieu was in fact biased or prejudiced in favor of FNBC, Mr. Guidry could not establish any "fraud or ill practice" within the intendment of Article 2004. In addition, the court noted that the allegations did not mandate Judge Landrieu's recusal under any subsection of Civil Procedure article 151, and, although a violation of the Judicial Code would justify disciplinary action by the Supreme Court, there was nothing in the law suggesting that a judge's failure to recuse would be grounds to nullify a judgment. Finding that the petition failed to state a cause of action, the trial court dismissed Mr. Guidry's action with prejudice.
In his challenge to this dismissal, Mr. Guidry first asserts that on the facts alleged, a timely motion to recuse would have had to have been granted based upon the appearance of impropriety. In support of this argument, he contends that the Supreme Court's application of Civil Procedure *1037 article 151 B and the Code of Judicial Conduct in In re Lemoine, 96-2116 (La.4/4/97), 692 So.2d 358, and In re Cooks, 96-1447 (La.5/20/97), 694 So.2d 892, has rendered the distinction between mandatory and permissive grounds for recusal in civil cases irrelevant. Quoting O'Neill v. Thibodeaux, 97-1065, p. 9 (La.App. 3d Cir.3/6/98), 709 So.2d 962, 967, writs denied, 98-0741, 98-0870 (La.5/1/98), 718 So.2d 416, 420, he argues that if a judge may be disciplined for a failure to recuse that creates the appearance of impropriety, then recusal under such circumstances is, in fact, mandatory. Mr. Guidry thus concludes that because the facts alleged in his petition "[u]nquestionably ... created the appearance of impropriety," Judge Landrieu's recusal would have been required if a timely motion had been filed.
We disagree. Accepting, arguendo, Mr. Guidry's assertion that his factual allegations create the appearance of impropriety, it is well-established in our law that the statutory grounds for recusal in Article 151 are exclusive. Pierce v. Charity Hospital, 550 So.2d 211, 214-15 (La.App. 4th Cir.), writ denied, 551 So.2d 1341 (La.1989), and cases cited therein. The fact that disciplinary action was imposed for failure to recuse pursuant to Article 151 B's permissive grounds under the particular facts presented in Lemoine and in Cooks does not, logically or otherwise, mandate recusal based upon an alleged appearance of impropriety. As this Court noted in the 1989 Pierce decision, and as the Third Circuit recently reiterated in Edwards v. Daugherty, 97-1542, p. 12 (La.App. 3d Cir.3/10/99), 729 So.2d 1112, 1121, writs denied, 99-1393, 99-1434 (La.9/17/99), 747 So.2d 1105, "the statutory grounds for recusal in civil cases have not been amended by the Legislature" to either include `appearance of impropriety' as a grounds for recusal or to require recusal under subsection B of Article 151. Absent such an amendment or a contrary interpretation by the Supreme Court, "a mere appearance of impropriety, not statutorily listed in La. C.C.P. art. 151, cannot be a basis for recusal." Pierce, 550 So.2d at 215 (citations omitted). Therefore, we find that the factual allegations of the petition must establish that one of the grounds for recusal specified in Article 151 existed when the prior case was on appeal to this Court.
Mr. Guidry next contends that because the Supreme Court has stated that Civil Procedure article 2004 "is not limited to cases of actual fraud or intentional wrong-doing," Kem Search, supra, 434 So.2d at 1070, the trial court erred in holding that he has no cause of action for nullity unless he alleges actual bias or prejudice by Judge Landrieu. He notes that the "ill practice" he has alleged is the failure to disclose colorable grounds for recusal, and that it was this "impropriety" that deprived him of the right to file a motion for recusal and resulted in the judgment at issue. Because the jurisprudence has long held that Article 2004 is intended to provide an equitable remedy for injustice, even if inadvertent, Mr. Guidry asserts that it is not necessary that he establish the existence of bias or prejudice in order to obtain a judgment of nullity.
We find no error in the trial court's ruling on this issue. Contrary to Mr. Guidry's assertion, the trial court did not hold that intentional wrongdoing or bad faith was a necessary element of an action for nullity. Instead, it determined that unless Mr. Guidry alleged facts to indicate that Judge Landrieu could not fairly and impartially decide the prior appeal, then he had no valid grounds for his underlying claim, i.e., that he had been deprived of the right to recuse the judge. Accordingly, the court explained, if Mr. Guidry could not establish that Judge Landrieu should have been recused due to actual bias or prejudice, then he has no cause of action under Article 2004 because there was no deprivation of a meritorious legal right. We agree with this analysis, and, therefore, must reject Mr. Guidry's argument *1038 that the exception was decided based upon an incorrect standard.
Mr. Guidry next asserts that, given the benefit of all reasonable inferences, his petition states a cause of action for recusal under two subsections of Article 151 B. He argues first that he need not show actual bias by Judge Landrieu because B(4) establishes a per se prohibition applicable under these circumstances. Civil Procedure article 151 B(4) provides:
B. A judge of any court, trial or appellate, may be recused when he:
(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of the attorney, within the second degree....
Mr. Guidry states that in order to give this language "any meaning when a corporate entity is a party, one has to look to the shareholders to determine whether recusal is required." In other words, because Judge Landrieu's son-in-law acquired stock in a corporation that was soon to be merged with FNBC's parent corporation, the judge was "related to [FNBC], or to the spouse of [FNBC], within the fourth degree."
Mr. Guidry offers no Louisiana jurisprudence to support his proffered interpretation of B(4), nor could any be found by this Court.[4] To the contrary, Civil Code article 24 specifies that "[t]he personality of a juridical person is distinct from that of its members." Although there are circumstances in which a court may ignore the corporate fiction to determine if an entity is the "alter ego" of its individual shareholders, the most liberal reading of Mr. Guidry's petition fails to suggest the existence of such a situation here. See Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991); In re New Orleans Train Car Leakage Fire Litigation, 96-1677 (La.App. 4th Cir.3/5/97), 690 So.2d 255. Therefore, we reject the contention that a son-in-law's inheritance of stock in a corporate party to a suit, without more, would necessitate a judge's recusal under our law.
Mr. Guidry next maintains that, notwithstanding his failure to allege that Judge Landrieu was actually prejudiced, he can establish that recusal would have been required under Civil Procedure article 151 B(5), which states:
B. A judge of any court, trial or appellate, may be recused when he:
(5) Is biased, prejudiced or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
According to Mr. Guidry, his allegations concerning the collateral mortgages and the "relationship with a key witness in the case" demonstrate that Judge Landrieu was "interested in the cause," which is sufficient for recusal because it is one of the alternative grounds specified in this subsection. This argument is not supported by the language of the statute or the jurisprudence thereunder.
Because a judge is presumed to be impartial, it has long been held that recusal under Article 151 B(5) is justified only when "the bias, prejudice or personal interest [is] of a substantial nature and based on more than conclusory allegations." Pierce, supra, 550 So.2d at 213, and authorities cited therein (emphasis added). To adopt Mr. Guidry's interpretation of this provision would be to render the final clause, "to such an extent that he would be unable to conduct fair and impartial *1039 proceedings," superfluous and would delete the standard by which a judge's "interest in the cause" is measured. See, e.g., Donnell v. Donnell, 567 So.2d 1143, 1145-46 (La.App. 2d Cir.1990) (absent indication of bias, a judge's social relationship with a litigant is insufficient grounds for recusal). To elevate the mere existence of a judge's relationship with a witness or the fact he or she banks with a party to litigation to the level of establishing that a judge has an "interest in the cause or its outcome," as Mr. Guidry suggests, would eviscerate the presumption of judicial impartiality, and require recusal based on conclusory allegations of "interest" in the cause. We, therefore, decline to depart from the jurisprudence that requires an allegation of actual bias or prejudice to recuse a judge under Article 151 B(5).
In his final argument on appeal, Mr. Guidry contends that the trial court's judgment should be modified to permit him to amend his petition pursuant to Civil Procedure article 934, which states:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the exception cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
Mr. Guidry argues that because the only deficiency found in his petition was the failure to allege that Judge Landrieu was biased in favor of FNBC, and this allegation "could easily be made" by adding the word "prejudice" to one or more paragraphs, Article 934 mandates that leave to amend be granted. Superficially, this argument appears technically and procedurally correct. However, careful consideration of the substantive law requires us to hold that the suggested amendment alleging "prejudice" will not establish that Mr. Guidry is entitled to the relief sought through this Petition for Nullity.
The appellate opinion at issue was rendered in September 1995 by a panel of three judges, the identity of whom was known to all parties prior to the April 1995 oral arguments. Under Civil Procedure article 2166 D, this judgment became final and definitive in January 1996, when three writ applications to our Supreme Court were denied. The instant petition, filed more than two years later in March 1998, contains nothing that could be construed as alleging either that Judge Landrieu willfully concealed relevant information or that his consideration of the issues presented, and the resultant opinion, was influenced by any relationship with FNBC or its employees. Mr. Guidry has had several "bites" at the apple. He cannot cure the deficiency of his petition for nullity by a conclusory allegation of actual prejudice on the part of Judge Landrieu.
For the reasons assigned, the judgment maintaining the exception of no cause of action is affirmed, and Mr. Guidry's action for nullity is dismissed with prejudice.
AFFIRMED.
NOTES
[1] Mr. Guidry also filed a federal suit against these defendants, which was dismissed. Guidry v. Bank of LaPlace, 740 F.Supp. 1208 (E.D.La.1990), affirmed as modified, 954 F.2d 278 (5th Cir.1992).
[2] In addition, only two days before the hearing on the exceptions, Mr. Guidry sought leave to amend his petition to allege that a second member of the appellate panel owned property that was mortgaged to FNBC. Although not specifically ruled upon, it appears from the trial court's judgment and reasons that leave to amend was denied.
[3] Since nullification of the appellate opinion would ordinarily reinstate the defendants' appeals, rather than convert the jury verdict into a final judgment, it appears that Mr. Guidry is requesting this relief as a sanction for FNBC's alleged failure to disclose its relationship with Judge Landrieu.
[4] Instead, Mr. Guidry's appellate brief invites us to "See generally: Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710 (7th Cir.1986); Catherines v. Copytele, Inc., 608 F.Supp. 1031 (D.N.Y.1985)." However, as both of these cases were decided under the federal statute that explicitly mandates recusal if a federal judge or the judge's spouse "has a financial interest ... however small" in a corporate party, we find them inapposite.